**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| MARIYA K. FRYE, *Plaintiff*, | ) | |
| v. | ) | No. 1:25-cv-478 (PTG/WEF) |
| COMMISSIONER OF SOCIAL SECURITY, *Defendant*. | ) | |

# MEMORANDUM ORDER

This matter comes before the Court on the May 13, 2026, Report and Recommendation ("R&R") from Magistrate Judge William E. Fitzpatrick on the parties' cross-motions for summary judgment (the "Motions"). Dkt. 22. The Magistrate Judge recommended that the Court: deny Plaintiff's Motion for Summary Judgment (Dkt. 11); grant Defendant's Motion for Summary Judgment (Dkt. 17); and affirm the final decision of Frank Bisignano, Commissioner of the Social Security Administration ("Commissioner"), that Plaintiff is not disabled as defined by the Social Security Act ("Act"). Dkt. 22 at 21. Judge Fitzpatrick advised the parties that objections to the R&R had to be filed within fourteen (14) days of service and failure to object waives *de novo* review. *Id.* at 22. On May 27, 2026, Plaintiff timely objected to the R&R. Dkt. 23. Plaintiff avers that Judge Fitzpatrick erred by failing to scrutinize the Administrative Law Judge's ("ALJ") allegedly improper assessment of the medical findings of Dr. Mauranne, a neuropsychologist. *Id.* at 2. For the reasons that follow, the Court **OVERRULES** Plaintiff's Objections (Dkt. 23) and **ADOPTS AND APPROVES** the Magistrate Judge's Report and Recommendation. Dkt. 22.

## I. Factual Background

As an initial matter, the Court finds that the Magistrate Judge accurately and comprehensively detailed the procedural history and factual background of this case in the R&R. Dkt. 22 at 2–5. Accordingly, this Court adopts those findings in full and will provide a brief recitation of the most relevant portions.

On July 20, 2020, Plaintiff filed an application seeking disability insurance benefits pursuant to Title II of the Act. *See* Administrative Record ("AR") 403–04. On February 5, 2021, Plaintiff filed an application for supplemental security income pursuant to Tile XVI of the Act. AR 405–11. Both applications allege a disability onset date of July 19, 2020. AR 403, 405. The ALJ determined that Plaintiff's "earning record show[ed] that [she] . . . ha[d] acquired sufficient quarters of coverage to remain insured through June 30, 2021." AR 178. Consequently, Plaintiff had to establish that she was disabled on or before June 30, 2021, to be entitled to disability benefits under the Act. *Id.*

In her applications, Plaintiff alleged that she was disabled due to neurodevelopmental disabilities, hydrocephaly, attention deficit hyperactivity disorder ("ADHD"), Lyme disease, learning disabilities, and anxiety/depression. AR 470. On December 10, 2021, Plaintiff's application for Social Security disability benefits and her application for supplemental security income were denied. AR 307–10, 311–15. Plaintiff's applications were denied after it was determined that she had failed to meet the statutory definition of a "disabled person" as that term is defined by the Act and relevant regulations. AR 307, 312. On January 3, 2022, Plaintiff sought reconsideration of the decision denying her benefits and supplemental security income. *See* AR 316. Plaintiff provided new information to support her claim for benefits, which included medical records from a neurologist, a psychiatrist, a clinical psychologist, and a family medicine practitioner. After the application materials were reviewed by a physician and a disability examiner,

the same conclusion was reached: she did not satisfy the statutory criteria to be considered disabled. AR 318–25.

On June 26, 2023, a hearing before an ALJ was conducted to adjudicate Plaintiff's disability claims. AR 204–241. The hearing afforded Plaintiff the opportunity to provide testimony and to respond to questions posed by the ALJ. AR 212–33. On December 22, 2023, the ALJ issued a decision finding that Plaintiff was not disabled as defined by the Act and that she had the "residual functional capacity to perform light work." AR 178, 183, 193. In arriving at this conclusion, the ALJ considered medical evidence, opinions, and recommendations from numerous medical experts, which included a neurosurgeon, a rheumatologist, a physician, a school psychologist, a clinical psychologist, two psychiatrists, and a neuropsychologist. AR 185–90.

On January 13, 2025, the Social Security Appeals Council denied Plaintiff's request for review of the ALJ's decision. AR 1. On March 18, 2025, Plaintiff filed this civil action seeking review of the ALJ's decision. Dkt. 1.

## II. Legal Standard

This Court reviews *de novo* any part of the Magistrate Judge's disposition to which an objection has been properly made. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(c). Upon review, this Court must decide "whether the factual findings are supported by substantial evidence and were reached through application of the correct legal standard." *Boyd v. Kijakazi*, 2:21-cv-29, 2022 WL 949904, at *1 (E.D. Va. Mar. 29, 2022) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Thereafter, if the court determines that "the Commissioner's denial of benefits is supported by substantial evidence and was reached by applying the correct legal standard, the Court must affirm the Commissioner's final decision." *Id.* (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

Congress makes clear that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner . . . the court shall review only the question of conformity with such regulations and the validity of such regulations." 42 U.S.C. § 405(g). Here,

> Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. Though the threshold for such evidentiary sufficiency is not high, it requires that more than a mere scintilla of evidence support the ALJ's findings. In undertaking this review, it is not our place to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.

*Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021) (citation modified). However, courts "do not reflexively rubber-stamp an ALJ's findings." *Id.* (quoting *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). To be sufficient, the ALJ's decision should "identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F. 3d 686, 694 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

## III. Analysis

Plaintiff raises a single issue in her objection, which is that the "ALJ failed to properly evaluate the opinions provided by Dr. Mauranne." Dkt. 23 at 2. Dr. Natalia Lugina Mauranne, M.S., M.A., Psy.D., and L.C.P., conducted a neuropsychological evaluation of Plaintiff in September–October 2020. AR 787. The ALJ provided a thorough summary and analysis of Dr. Mauranne's findings in his opinion, which stated the following:

> On November 20, 2020, Ms. Mauranne, MS, neuropsychologist, performed a neuropsychological evaluation. The claimant explained she graduated high school with a regular diploma. She stated she could not hold a job. The evaluation found the claimant to be at the low end of average in verbal intelligence and below average in nonverbal abstraction. Ms. Mauranne found the claimant had deficits in sustained attention, processing speed, auditory language comprehension, and visual motor integration/planning. She demonstrated below expectations in general fund of

> knowledge, vocabulary, reading fluency, spelling and math calculation skills. (8F).
>
> Ms. Mauranne performed WAIS-IV testing, but the wide scatter among findings were from average to impaired, rendering her full-scale IQ to be meaningless. Nevertheless, after reviewing the findings, she found the claimant to be in the average to below average level of intelligence that she found the claimant compromised by narrow neurocognitive deficits that could be compensated with extra time and explanation. She determined the claimant suffered from mild neurocognitive disorder due to multiple etiologies without behavioral disturbance, including hydrocephalus, stress, past trauma, sleep disorder, Lyme disease, and ADHD, by history, as well as developmental coordination disorder (dyspraxia), MDD, recurrent episode, severe, generalized anxiety disorder (GAD), and unspecified insomnia. (8F).
>
> Ms. Mauranne provided no functional limitations to evaluate. The opinion is not persuasive, as it appears that despite 7 hours of interviews, she found a very mixed series of results from which she had some difficulty forming a full-scale IQ. The undersigned [ALJ] finds the average to below average IQ consistent with her regular high school diploma, and that her mild neurocognitive disorder could result in some pace problems, but the undersigned [ALJ] is not persuaded that she requires extra supervision, as that is not supported by the review. Ms. Mauranne's findings regarding the claimant's eligibility for benefits under the Americans with Disabilities Act (ADA) are not relevant to the Social Security Administration's disability analysis and are not persuasive.
>
> Ms. Mauranne's opinion that the claimant should be allowed extra time for completing manual tasks due [to] her Developmental Coordination Disorder (dyspraxia (DCD)) is not persuasive because the claimant has normal coordination (Exhibits 6F/6, 15F/29, 16F/10, 24F/8, 26F/12, 27F/3, and 31F/8).

AR 189-190.

First, Plaintiff contends that the ALJ referring to "Dr. Mauranne as Ms. Mauranne" was a material error that conveyed his disregard for her medical credentials. Dkt. 23 at 2. However, this is unsupported by the record. The record reflects that the ALJ identified Dr. Mauranne as a neuropsychologist and that he scrutinized her medical findings in a manner no different from that of any other medical professional involved in the assessment. AR 183–91. Even Plaintiff concedes that "the analytical process used by the ALJ on evaluating Dr. Mauranne's findings was

the same used on other medical professionals." Dkt. 23 at 3. In considering Dr. Mauranne's medical opinion, the ALJ did give weight to her medical credentials.

Second, Plaintiff attempts to characterize the ALJ's assessment of Dr. Mauranne's medical opinions as "demonstrating . . . predetermined disdain." Dkt. 23 at 4. The Court disagrees. Plaintiff bases this contention on the alleged facts that the ALJ "did not . . . give enough consideration" to the length of time Dr. Mauranne spent on the examination and that the functional limitations she identified were not given sufficient probative value. *Id.* at 3. Regarding the exam, the ALJ did recognize that it was seven hours long and analyzed the substance of Dr. Mauranne's findings in a manner consistent with his legal obligation. AR 189–90. Plaintiff again concedes that "the length of the examination may not [have] be[en] something that needed to be explicitly addressed." Dkt. 23 at 3. Therefore, it is hard to conclude that this error alone is sufficient to merit remand.

Moreover, the ALJ recognized that Dr. Mauranne conducted a comprehensive neuropsychological examination, which included Wechsler Adult Intelligence Scale testing. AR 189. Despite appreciating the diagnostic examinations Dr. Mauranne conducted, the ALJ ultimately determined they offered limited value for the issue he had to decide. AR 189. The Court finds that the ALJ's decision to ascribe limited probative value to Dr. Mauranne's conclusions regarding the functional limitations associated with Plaintiff's cognitive deficits is supported by substantial evidence. AR 189-190. The ALJ simply disagreed with Dr. Mauranne's conclusion that Plaintiff "requires extra supervision." AR 189. The ALJ was more persuaded by the findings of clinical psychologist Dr. Robert Verdile, who found that Plaintiff "could perform simple, routine, and repetitive work." *Id.* The ALJ was also more convinced by the findings of psychologist Dr. Tommy Davis, who determined that Plaintiff suffered from "mild to moderate"

functional limitations that would have no impact on her "understanding, remembering, and applying simple directions and instructions." AR 190.

In contrast, the ALJ found Dr. Mauranne's opinion to be unpersuasive because "she found a very mixed series of results" and made findings related to Plaintiff's "eligibility for benefits under the Americans with Disabilities Act [which] are not relevant to the Social Security Administration's disability analysis." AR 189. Specifically, Dr. Mauranne offered opinions regarding workplace accommodations that were applicable to the Americans with Disabilities Act and not relevant to the Social Security Administration's regulatory framework defining disability. To the extent that Dr. Mauranne's findings were not relevant to the determination of benefits under the Social Security Administration's regulatory scheme, the ALJ did not need to rely on them to arrive at his legal conclusion.

Third, Plaintiff contests the ALJ's conclusion that her "need for extra supervision was . . . unsupported by the record." Dkt. 23 at 4. Although Dr. Mauranne opined that Plaintiff required extra supervision based on her neurocognitive disorders (AR 787–90), the ALJ was more persuaded by the findings of the State agency psychologist, Dr. Verdile, and Dr. Davis, who disagreed. AR 189, 190, 250, 254–56, 264, 282, 294, 299–300. Indeed, the ALJ's conclusion was supported by Plaintiff's own testimony indicating that she cares for her three young children on her own; drives to one of her children's school, the grocery store, and doctor's appointments; and helps her child with homework despite her neurocognitive disorder and other medical ailments. AR 214–17, 224. Given Plaintiff's ability to perform these daily tasks, the ALJ "was not persuaded that [Plaintiff] requires extra supervision" as recommended by Dr. Mauranne. AR 189. The ALJ reasoned, in a manner consistent with Dr. Mauranne's findings, that Plaintiff has the residual function capacity to "perform [work that is] simple, routine, repetitive, [and] low stress." AR 183.

As the Magistrate Judge articulated, "even though the ALJ found the underlying basis for much of Dr. Mauranne's findings to be unpersuasive, the ALJ's final conclusions [were] substantially similar to Dr. Mauranne's recommendations." Dkt. 22 at 20.

In sum, there is sufficient record evidence to support the ALJ's conclusion regarding the degree of supervision Plaintiff requires, and the relationship between that evidence and the legal conclusion is far from attenuated. Accordingly, the Court agrees with Magistrate Judge Fitzpatrick that the ALJ fully complied with the Social Security Administration's regulations and issued a reasoned decision supported by substantial evidence. Therefore, the Commissioner's final decision denying benefits is affirmed.

Having conducted a *de novo* review of the record, the Court **APPROVES** and **ADOPTS** the findings of Magistrate Judge Fitzpatrick in full, as follows.

Accordingly, it is hereby

**ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 11) is **DENIED**; it is further

**ORDERED** that the Commissioner's Motion for Summary Judgment (Dkt. 17) is **GRANTED**; and it is further

**ORDERED** that the Clerk enter judgment in Defendant's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

Entered this 29th day of September, 2026.
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge